IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW RUSSELL and
ANGELA ASHABA KIRABO,

                              Plaintiffs,

        v.                                                OPINION and ORDER

ANTONY BLINKEN,                                           23-cv-520-jdp
MEG WHITMAN,
ALEJANDRO MAYORKAS, and
THE U.S. EMBASSY, NAIROBI, KENYA

                              Defendants.

---

Plaintiffs Matthew Russell and Angela Ashaba Kirabo, his wife, seek to compel the defendants, United States government officials responsible for processing immigrant visas, to conduct a consular interview and to adjudicate Kirabo's family-based visa application. Kirabo completed the initial steps for her visa in November 2022, but defendants have not scheduled her for a consular interview, which is the next step in completing her visa application. Plaintiffs allege that defendants have unreasonably delayed processing Kirabo's application and ask the court to compel defendants to act.

Defendants move to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. The court will grant defendants' motion. The court concludes that it has jurisdiction to compel defendants to schedule a consular interview if defendants have unreasonably delayed doing so. But plaintiffs have failed to plausibly allege unreasonable delay under the principles in *Calderon-Ramirez v. McCament*, 877 F.3d 272 (7th Cir. 2017), so the court will dismiss plaintiffs' complaint for failure to state a claim.

BACKGROUND

Many of the facts that the parties provide in their briefs consist of publicly available statistics and information about the processing of visa applications. This information is outside the pleadings, but district courts may take judicial notice of matters of public record even at the motion to dismiss stage without converting the motion into a motion for summary judgment. *Anderson v. Simon*, 217 F.3d 472, 474–75 (7th Cir. 2000). Judicial notice of facts within public records is appropriate when the accuracy of the records "cannot reasonably be questioned." Fed. R. Evidence 201. Both parties cite State Department records in their briefs to demonstrate the impact of the COVID-19 pandemic on visa processing, indicating that they do not dispute the accuracy of these records, so the court will take judicial notice of the facts contained in them. The court draws the facts specific to plaintiffs' situation from plaintiffs' complaint, Dkt. 1, and presumes them to be true for the purpose of resolving the motion to dismiss.

**A.  Family-based visa process**

Obtaining a visa based on a close family relationship with a U.S. citizen is a two-step process. First, the citizen files a family-based petition with the United States Citizen and Immigration Services (USCIS) to confirm a qualifying relationship between the citizen and non-citizen. 8 U.S.C. §§ 1153(a), 1153(f), 1154(a)(1)(A)(i). USCIS reviews the petition and, if approved, forwards it to the National Visa Center. Second, the non-citizen submits required documentation and pays fees to the National Visa Center. *See* Bureau of Consular Affairs, Department of State, *Immigrant Visa Process: Begin National Visa Center (NVC) Processing*. The National Visa Center schedules an interview at a U.S. embassy or consulate general, filling appointments based on the date that the non-citizen's documentation was completed. Bureau

of Consular Affairs, Department of State, *Immigrant Visa Process: Upload and Submit Scanned Documents – Documentarily Complete*. The non-citizen appears before a consular officer at the scheduled interview time, and the consular officer issues or denies the visa. 8 U.S.C. §§ 1201(g); 22 C.F.R. § 42.81(a).

## B. Effect of COVID-19 on visa processing

The COVID-19 pandemic slowed visa processing worldwide. In 2020, the State Department temporarily suspended most visa services, and as a result, fewer visas were issued that year. Visa issuances have since recovered to pre-pandemic rates:

**Immediate Relative Visas Issued Worldwide**[1]

| 2019 | 2020 | 2021 | 2022 |
|------|------|------|------|
| 186,584 | 108,292 | 170,604 | 212,185 |

Visa issuance at the embassy in Nairobi, where Kirabo's interview will be scheduled, is consistent with the worldwide pattern:

**IR1 Visas Issued at the U.S. Embassy in Nairobi**[2]

| 2019 | 2020 | 2021 | 2022 | 2023 |
|------|------|------|------|------|
| 452 | 256 | 518 | 511 | 511 |

---

[1] Bureau of Consular Affairs, Department of State. *Immigrant and Nonimmigrant Visas Issued at Foreign Service Posts: Fiscal Years 2018-2022*, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/annual-reports/report-of-the-visa-office-2022.html.

[2] IR1 visas are a subset of immediate relative visas issued to the spouses of U.S. citizens. 9 FAM 502.1-3. The data is available at Bureau of Consular Affairs, Department of State. *Monthly Immigrant Visa Issuance Statistics*, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/immigrant-visa-statistics/monthly-immigrant-visa-issuances.html.

The pandemic contributed to a backlog of visa petitioners who are awaiting consular interviews. In 2019, the average number of petitions pending interviews each month was 60,866. Bureau of Consular Affairs, Department of State, *Immigrant Visa Interview-Ready Backlog Report*. In November 2022, when Kirabo completed all the required forms and documents, 423,367 petitions were pending interviews. *Id.* Most recently, in April 2024, 404,459 petitions were pending interviews. *Id.*

**C. Plaintiffs' visa application**

Plaintiff Matthew Russell is a United States citizen. His wife, plaintiff Angela Ashaba Kirabo, is a citizen of Uganda. Russell filed a family-based visa petition for Kirabo in July 2021. USCIS approved the petition in July 2022 and forwarded it to the National Visa Center. The National Visa Center informed Kirabo on November 17, 2022, that she had completed all required forms and documents. But Kirabo has not been scheduled for an interview at the U.S. Embassy in Nairobi. Plaintiffs have contacted the embassy several times and have been informed that Kirabo's petition is awaiting an interview appointment. Plaintiffs have been separated from each other and have suffered other hardships, including lost job opportunities, because Kirabo has not yet obtained a visa.

ANALYSIS

Plaintiffs bring claims under the Administrative Procedure Act, 28 U.S.C. § 706(1), the Mandamus Act, 28 U.S.C. § 1361, and the Fifth Amendment Due Process Clause, contending that defendants have unreasonably delayed processing Kirabo's visa.

The court will grant defendants' motion to dismiss plaintiffs' due process claim because plaintiffs have forfeited that claim. Defendants contended in their brief that plaintiffs have no

constitutionally protected interest to live together in the United States, Dkt. 6, at 17–20. Plaintiffs failed to respond to these arguments at all, meaning that they forfeited any potential arguments in opposition. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

The remaining issues are whether the court has jurisdiction under the Administrative Procedure Act or the Mandamus Act, and whether plaintiffs have stated a plausible claim for relief based on unreasonable delay.

## A. Jurisdiction

The court must determine whether it has jurisdiction over a claim before it can proceed to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998). Most courts have concluded that, in cases to compel agency action, the jurisdictional requirements under the Administrative Procedure Act and the Mandamus Act are the same. *Sutton v. Napolitano*, 986 F. Supp. 2d 948, 962 (W.D. Wis. 2013); *see also Hernandez-Avalos v. I.N.S.*, 50 F.3d 842 (10th Cir. 1995). Under either statute, federal courts have jurisdiction to compel agency action only if the agency has a mandatory duty to take the action. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004) (Administrative Procedure Act allows courts to order agency action if "the agency fails to carry out a mandatory, nondiscretionary duty"); 28 U.S.C. § 1361 (Mandamus Act grants jurisdiction to compel agencies to "perform a duty owed to the plaintiff").

There is no Seventh Circuit precedent about whether the State Department has a mandatory duty to schedule visa petitioners for consular interviews, and district courts across the country are split on the issue.[3] The question turns on the interpretation of a statute, 8

---

[3] Cases holding that § 1202(b) and § 42.81(a) impose a mandatory duty to schedule consular interviews include *Azam v. Bitter,* No. CV 23-4137, 2024 WL 912516, at *4–*5 (D.N.J. Mar. 4, 2024); *Iqbal v. Blinken*, No. 223CV01299KJMKJN, 2023 WL 7418353 (E.D. Cal. Nov. 9, 2023); *Akhter v. Blinken*, No. 2:23-CV-1374, 2024 WL 1173905 (S.D. Ohio Mar. 19, 2024);

U.S.C. § 1202(b) and a State Department regulation, 22 C.F.R. § 42.81(a). The statute states that all immigrant visa applications "shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). The regulation states that once a visa application has been properly completed and executed before a consular officer, the officer "must" issue or refuse the visa. 22 C.F.R. § 42.81(a).

These laws use the imperative words "shall" and "must," indicating that they impose a mandatory duty to adjudicate visa applications. *See, e.g.*, *Akhter*, 2024 WL 1173905, at *4. But courts disagree about whether that mandatory duty includes a duty to schedule petitioners for consular interviews. Courts taking the view that there is not a mandatory duty to schedule consular interviews have reasoned that § 1202(b) and § 42.81(a) require the State Department to adjudicate visa applications only after an application is filed, which, according to State Department regulations, doesn't happen until after the consular interview. 22 C.F.R. § 40.1(l)(2); *see, e.g., Khan*, 2023 WL 6311561, at *3. Courts taking the view that there is a mandatory duty to schedule consular interviews have reasoned that a visa petitioner can't file an application without attending a consular interview, so a mandatory duty to adjudicate filed visa applications necessarily includes a mandatory duty to schedule consular interviews. *See, e.g., Azam*, 2024 WL 912516, at *4–*5.

---

*Mahmood v. Blinken*, No. CV 23-1596, 2023 WL 6323796 (E.D. Pa. Sept. 28, 2023).

Cases holding that § 1202(b) and § 42.81(a) do not impose a mandatory duty to schedule consular interviews include *Khan v. Bitter*, No. 22 C 6617, 2023 WL 6311561 (N.D. Ill. Sept. 28, 2023); *Prince v. Blinken*, No. 2:23CV100-PPS/APR, 2023 WL 5670158, at *4–*5 (N.D. Ind. Aug. 31, 2023); *Khalili-Araghi v. Bitter*, No. 23-CV-00696-LB, 2023 WL 5988590 (N.D. Cal. Sept. 13, 2023).

This court concludes that the second interpretation is more persuasive. An interpretation of § 1202(b) and § 42.81(a) in which the mandatory duty attaches only after the consular interview would neuter any mandatory effect that these laws have in the first place. A visa petitioner must attend a consular interview to file a visa application. If there is no duty to schedule interviews, an agency could avoid its duty to adjudicate applications by simply not scheduling any interviews. *See Azam* 2024 WL 912516, at *6. Visa petitioners would be in a "catch-22" in which they "cannot take any actions to prod the [agency] to schedule an interview, but they also cannot bring suit to compel the agency to schedule the interview so it can adjudicate their application, as statutorily required." *Iqbal*, 2023 WL 7418353, at *7. To prevent this absurd result, the court concludes that § 1202(b) and § 42.81(a) impose a mandatory duty to take all steps necessary to adjudicate properly filed visa applications, including scheduling petitioners for consular interviews. This means that defendants have a mandatory duty to take the action that the plaintiffs request, so the court has jurisdiction in this case under the Administrative Procedure Act and the Mandamus Act.

## B.  Unreasonable delay

As with jurisdiction, the standard to compel agency action under the Administrative Procedure Act and the Mandamus Act is the same. *Zagnoon v. Blinken*, No. 23-cv-629-wmc, 2023 WL 7279295 (W.D. Wis. Nov. 3, 2023); *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). Under either statute, the question is whether the agency has "unreasonably delayed" in taking the requested action. 5 U.S.C. § 706(1) (Administrative Procedure Act authorizes courts to "compel agency action . . . unreasonably delayed"); *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (there is a duty under Mandamus Act to "adjudicate [visa] applications in a reasonable period of time").

The Seventh Circuit's decision in *Calderon-Ramirez* is controlling. In that case, the court held that an 18-month delay for a visa, without some other aggravating factor, is insufficient to state a claim of unreasonable delay under the Administrative Procedure Act or the Mandamus Act. 877 F.3d 272. The plaintiff in *Calderon-Ramirez* had been waiting 18 months for a U-visa, but he didn't allege any facts differentiating himself from others waiting for similar visas, so the court concluded that ordering the agency to adjudicate his application would unfairly let him "skip ahead" of others who had filed earlier applications. *Id.* at 275. The court also noted that the State Department had taken steps to reduce its backlog of U-visa applications, which further counseled against a finding of unreasonable delay. *Id.* at 276.

Plaintiffs' complaint fails to state a claim for unreasonable delay for the same reasons. Kirabo has been waiting for a consular interview for 18 months, the same length as the wait in *Calderon-Ramirez*. And plaintiffs have not alleged any aggravating factor that could make Kirabo's 18-month wait unreasonable. Plaintiffs do not allege that Kirabo has been treated differently from others who are also waiting for visas, so a court order to adjudicate her application would unfairly let her "skip ahead" in line. And the public data the parties cite in their briefs show that the number of visas issued has increased and that the number of petitions pending consular interviews has decreased in recent years, indicating that the agencies are taking steps to reduce pandemic-related backlogs. Plaintiffs have alleged harms, including time spent apart and lost job opportunities, that weigh in their favor. *See Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984). But these harms, which other visa petitioners undoubtedly share, aren't enough to outweigh the other factors, particularly the unfair effect that an order in Kirabo's favor would have on other visa petitioners.

Plaintiffs advance two arguments in an attempt to defeat this conclusion. First, they argue that the motion to dismiss should be denied "to allow for discovery to verify if other applicants were skipped ahead of Plaintiff." Dkt. 9, at 10. But *Calderon-Ramirez* forecloses this argument. Plaintiffs must set forth some facts that Kirabo has been treated differently than other petitioners before they can be entitled to discovery. *Calderon-Ramirez*, 877 F.3d at 275–76.

Second, plaintiffs attempt to distinguish *Calderon-Ramirez* on the basis that it involved a U-visa, which has a statutory cap of 10,000 visas per year, while plaintiffs' case involves an immediate relative visa, which has no statutory cap. But this factual distinction is immaterial. As the court explained in *Calderon-Ramirez*, there were two waiting periods for U-visas because of the statutory cap—one for adjudication of eligibility (unaffected by the statutory cap) and one to receive a U-visa (affected by the statutory cap). *Id.* at 274. The plaintiff in *Calderon-Ramirez* was still in the first waiting period when he filed his claim for unreasonable delay, so his claim was unrelated to the statutory cap. *Id.* at 275.

The relevant facts of this case are indistinguishable from *Calderon-Ramirez*, so the court will follow that precedent and dismiss plaintiffs' complaint for failure to state a claim. The court will also deny plaintiffs leave to amend their complaint. The general rule is that the court should give plaintiffs at least one chance to cure pleading deficiencies. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). But the court does not need to provide plaintiffs with a chance to cure if doing so would be futile. *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 777 (7th Cir. 2013). Plaintiffs have not asked for leave to amend and it would be futile to give leave, because plaintiffs implicitly concede in their response brief that they cannot allege an aggravating factor that would state a claim for unreasonable delay under

*Calderon-Ramirez*. Plaintiffs state that they need discovery to "verify if other applicants were skipped ahead of" Kirabo, Dkt. 9 at 10, implicitly conceding that they have no facts now to allege that Kirabo was treated differently than others who are also waiting for visas. Plaintiffs also cite data showing that the State Department has increased the number of visas it issues since before the COVID-19 pandemic, Dkt. 9, at 4, implicitly conceding that the agency is taking steps to address pandemic-related backlogs.


ORDER

IT IS ORDERED that:

1.  Defendants' motion to dismiss, Dkt. 5, is GRANTED, and plaintiffs' complaint is DISMISSED with prejudice.

2.  The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered May 1, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge